UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>**NOT FOR PUBLICATION**</u>

BARUCH WEISS, Trustee of the Regina Weiss Trust,

Plaintiff,

– against –

LINCOLN NATIONAL LIFE INSURANCE COMPANY,

Defendant.

<u>**MEMORANDUM & ORDER**</u>

14-CV-4944 (ERK) (JO)

KORMAN, J.:

## BACKGROUND

Plaintiff Baruch Weiss ("Weiss") filed the present lawsuit alleging that deficiencies in a notice sent by Defendant Lincoln National Life Insurance Company ("Lincoln") rendered Lincoln's purported termination of a life insurance policy invalid. He seeks a declaration that the policy is still in force. Although Weiss's Complaint lists a single cause of action, he alleges several grounds for relief. Indeed, Weiss claims that Lincoln miscalculated premiums, Compl. ¶¶ 15–19, ECF No. 1;[1] that, on the notice Lincoln sent alerting him that the policy was entering a grace period, Lincoln demanded an incorrect premium payment amount, *id.* ¶¶ 20–21; and that the notice provided an incorrect grace period, *id.* ¶¶ 22–23. According to Weiss, these deficiencies meant that the notice did not comply with the relevant statutory and policy provisions and thus was without effect. Lincoln has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), primarily arguing that Weiss's pre-litigations statements amount to concessions that bar his claim, and that the notice complied with the relevant statutory provisions and policy terms.

---

[1] The Complaint is "Exhibit A" to the Notice of Removal, beginning at Page ID # 8.

## A. Factual Background

Weiss is the trustee of the Regina Weiss Trust, which purchased a $5 million group life insurance certificate (the "Certificate" or the "Policy") from Lincoln, insuring the life of Regina Weiss. *Id.* ¶¶ 1, 3, 8. The Regina Weiss Trust was named as the beneficiary of the Policy. *Id.* ¶ 8. Regina Weiss is a New York resident, and the Regina Weiss Trust is a New York-based trust. *Id.* ¶¶ 4, 6–7. The Regina Weiss Trust purchased the Certificate in New Jersey. *See* Am. Verified Answer & Countercl. for Declaratory J. at 2 ¶ 5 & Ex. C [hereinafter Am. Answer], ECF No. 5.

The Certificate was issued under a master group insurance policy (the "Master Policy") held by a Rhode Island-based trust; indeed, the Master Policy in the present case is the same one that was at issue in a different case against Lincoln that was before me, *National Society for Hebrew Day Schools and Barry Weiss v. Lincoln National Life Insurance Company*, No. 14-CV-970 (ERK) (PK). *Compare* Am. Answer Ex. A, at 1[2] (noting that the Master Policy number is GRP 10.LWL), *with Nat'l Soc'y for Hebrew Day Schs.*, No. 14-CV-970 (ERK) (PK), Verified Answer & Countercl. Declaratory J. Ex. A, at 1 (Page ID # 232), ECF No. 16 (same), *and id.* Ex. B (Page ID # 277) (noting that "Bank Newport" in Middletown, Rhode Island, is the trustee of the trust that owns the Master Policy). As noted in the Memorandum and Order resolving Lincoln's motion for judgment on the pleadings in that case, the Master Policy covers "a group not recognized under New York law." *Nat'l Soc'y for Hebrew Day Schs.*, No. 14-CV-970 (ERK) (PK), Mem. & Order 3, ECF No. 36.

On July 31, 2012, Lincoln wrote to Weiss indicating that the Certificate had entered a grace period (the "Grace Notice").[3] Am. Answer Ex. E. According to the Certificate's terms, the

---

[2] Page numbers for exhibit A of the Amended Verified Answer refer to pages of the Certificate.

[3] In his Complaint, Weiss refers to this document as the "notice of cancellation." *See, e.g.*, Compl. ¶¶ 20–25.

Certificate enters a grace period when the "Cash Surrender Value" of the Certificate is insufficient to pay "monthly deductions due," *id.* Ex. A, at 7—that is, "the cost of insurance" plus "administrative charges," *id.* at 9. The Certificate provides for a sixty-day grace period. *Id.* at 7. The Certificate further provides that Lincoln will give notice to the Certificate owner "of the minimum amount due at least 30 days before the end of the grace period." *Id.*

The Grace Notice indicated that the Certificate had entered a grace period on July 6, 2012. *Id.* Ex. E. It further indicated that, to prevent the Certificate from lapsing, Weiss was required to send $14,067.57 to Lincoln "on or before September 4, 2012." *Id.* Because Lincoln did not receive payment by September 4, it sent Weiss a letter, dated September 10, 2012, stating that Certificate had lapsed. *Id.* Ex. G. Weiss attempted to tender the required payment shortly thereafter. *See id.* Ex. H.

In an effort to have the Policy reinstated, Weiss wrote to Lincoln asking for "a onetime courtesy to have the policy in force without lapsing since the payment [he sent after Lincoln sent the lapse notice] was still in the 10 days of lapsing date[] which is usually honored by the company." *Id.* He added that, "it wasn't due to any negligence on [his] part[,] just an unfortunate error." *Id.* Indeed, Weiss wrote that, "[w]hen [the] last payment was due[, he] was out of the country[,] and," although he had "made sure to schedule pickup with UPS beforehand," there was "a misunderstanding because on the 10th of September [he] realized that payment was never received t[h]rough UPS Tracking." *Id.* When his efforts were to no avail, Weiss, on October 28, 2012, applied to have the Policy reinstated. *Id.* Ex. I, at 1, 8. On December 11, 2012, Lincoln denied the reinstatement application. *Id.* Ex. J.

In a final attempt to resolve his dispute with Lincoln short of litigation, Weiss's attorney wrote to Lincoln on May 17, 2013. *See id.* Ex. F. In the letter, Weiss's attorney argued that the Grace Notice had "statutory deficiencies," which "render[ed] the notice invalid and a nullity." *Id.*

at 3. Accordingly, "[t]he lapse was not triggered and [would] not trigger until proper notice is sent." *Id.* On that score, Weiss's attorney indicated that Weiss would "accept [Lincoln's] response to th[e] letter . . . as a proper notice," and that Weiss would "be pleased to promptly furnish payment." *Id.* This effort evidently fell short because Weiss has filed the present lawsuit.

### B. Procedural Background

Weiss sued in Kings County Supreme Court on July 1, 2014, seeking a declaration "that the Policy is in full force and effect." Compl. at 6. After removing the suit to this court on August 20, 2014, Notice of Removal at 4, ECF No. 1, Lincoln filed an Answer on September 10, 2014, Answer at 5, ECF No. 4, and an Amended Answer and counterclaim for a declaration "that the Certificate was properly terminated" on September 30, 2014, Am. Answer at 8. Weiss has answered the counterclaims. Answer to Countercls. for Declaratory J., ECF No. 13.

Lincoln filed the present motion for judgment on the pleadings on July 13, 2015, Notice of Mot. J. on Pleadings 2, ECF No. 14, which was fully briefed as of September 17, 2015, Def.'s Reply Mem. Law Further Supp. Mot. J. Pleadings 9 [hereinafter Def.'s Reply Mem.], ECF No. 14 attach. 3. On November 19, 2015, the case was reassigned to me from Judge Matsumoto, because of overlapping issues presented in the present motion, and a motion for judgment on the pleadings in another case before me, *National Society for Hebrew Day Schools and Barry Weiss v. Lincoln National Life Insurance Company*, No. 14-CV-970 (ERK) (PK), which I decided on March 31, 2016, *see id.* Mem. & Order, ECF No. 36.

### ANALYSIS

### A. Legal Standard

Parties may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for

failure to state a claim." *Hogan v. Fischer*, 738 F.3d 509, 514–15 (2d Cir. 2013) (quoting *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006)). When adjudicating 12(c) motions, courts "accept[] the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 178 (2d Cir. 2013) (citing *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)). A court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009) (per curiam)). "A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Id.* (alteration in original) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)). This extends to "documents possessed by or known to the plaintiff and upon which [he or she] relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).

### B.    Merits

Lincoln moves for judgment on the pleadings, primarily arguing that Weiss's pre-litigation concessions "bar[] [his] claim as a matter of law," Def.'s Mem. Law Supp. Mot. J. Pleadings 9 [hereinafter Def.'s Mem.], ECF No. 14 attach. 1; *see also id.* at 1–2, 6–7, 8–10, 14–16; Def.'s

Reply Mem. 8–9; and the Grace Notice provided the correct grace period, and thus complied with the relevant statutory and Certificate provisions, Def.'s Mem. 11–16.  While both sides either agree or do not object to the application of New York law, *see* Pl.'s Mem. Law Opp'n Mot. J. Pleadings 5–14 [hereinafter Pl.'s Mem.], ECF No. 15; Def.'s Mem. 11–13; Def.'s Reply Mem. 1–3, because Lincoln argues that the statutory provisions upon which Weiss relies for his claims only apply to individual insurance policies, not group life insurance certificates, I address at the threshold which New York statutory provisions apply to the present dispute.  I then turn to each of Lincoln's primary arguments before addressing the remaining ancillary arguments Lincoln and Weiss raise in their memoranda of law.

1. <u>Applicable New York Statutory Provisions</u>

Under New York law, group policyholders are typically not afforded the same protections as individual policyholders; they are not entitled to any grace period, *see* N.Y. Ins. Law § 3220; *see also id.* § 3203(f), or grace notice, *see id.* § 3220; *see also id.* § 3211(f)(1).  Nevertheless, New York regulations provide that certificates "evidencing coverage under a policy delivered outside of New York to a group not recognized under New York law and regulations," like the Certificate at issue here, "must comply with the contract and loss or benefit ratio requirements of individual or group insurance, whichever, in the opinion of the superintendent, affords the certificate holder the greatest protection."  N.Y Comp. Codes R. & Regs. tit. 11, § 59.4(b).  This regulation applies to group policy "certificates deemed to have been delivered in [New York] under section 3201(b)(1)."  *Id.* § 59.2.  A group life insurance certificate is "deemed to have been delivered in [New York], regardless of the place of actual delivery" if the "certificate evidenc[es] insurance coverage on a resident of [New York]," like the Certificate at issue here, subject to certain exceptions that do not apply in this case.  N.Y. Ins. Law § 3201(b)(1).

There appear to be no cases, other than my own previous decision, interpreting this regulation—indeed, no cases resolving the issue of whether the grace period and notice requirements applicable to individual life insurance policies apply to group policies where the group is not one New York law recognizes.  The New York State Department of Financial Services has provided guidance on this issue, stating that, in these circumstances, "the group policyholder is entitled to a sixty-one day grace period."  N.Y. State Dep't of Fin. Servs., *Group Universal Life Product Outline* 22 (July 3, 2013), http://www.dfs.ny.gov/insurance/life/product/grp_ul_2013.pdf (citing N.Y. Ins. Law § 3203(a)(1)).  A prior version of this document explained that "[p]olicies must be in compliance with Section 3203(a)(1)," which provides for a grace period, and must provide notice "in accordance with Section 3211(b)."  N.Y. State Dep't of Fin. Servs., *Group Universal Life Insurance Outline* 16 (Sept. 9, 2002), http://www.dfs.ny.gov/insurance /life/product/trrgllot.pdf.

While these documents are not themselves regulations, they nevertheless provide some explanation by the Department of Financial Services of what it means to "comply with the contract . . . requirements of individual or group insurance, whichever, in the opinion of the superintendent, affords the certificate holder the greatest protection."  *See* N.Y Comp. Codes R. & Regs. tit. 11, § 59.4(b).  Such an explanation by the Department is at the very least persuasive and entitled to some deference.  *Cf. Gaines v. N.Y. State Div. of Hous. & Cmty. Renewal*, 90 N.Y.2d 545, 548–49 (1997) ("We have repeatedly held that the interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable."); *John Paterno, Inc. ex rel. Paterno v. Curiale*, 88 N.Y.2d 328, 333–34 (1996) ("[T]he Superintendent's interpretation of [an insurance regulation], 'if not irrational or unreasonable, will be upheld in deference to his special competence and expertise with respect to the insurance industry, unless it runs counter to the clear wording of a statutory

provision.'" (quoting *N.Y. Pub. Interest Research Grp. v. N.Y. State Dep't of Ins.*, 66 N.Y.2d 444, 448 (1985))); 2 N.Y. Jur. 2d, Admin. Law § 324, at 413–14 (1998) ("The construction and interpretation of an agency's regulation is a matter for the agency . . ., unless the regulation can be interpreted without the use of any special expertise." (footnotes omitted)).

### 2. Weiss's Pre-litigations Statements

Lincoln argues that in several documents—a letter from Weiss to Lincoln, a policy reinstatement form, and a letter from Weiss's attorney to Lincoln—Weiss conclusively conceded that the Certificate lapsed. *See id.* at 1–2, 6–7, 8–10, 14–16; Def.'s Reply Mem. 8–9. Lincoln further contends that Weiss's allegations "that the premium amount listed on the Grace Period Notice [is] 'Miscalculated' are of no moment," because "[t]his is not a case where the Plaintiff made payment of an insufficient amount of premium," but instead, "where Plaintiff plainly admits that the premium payment *was not made at all*." Def.'s Mem. 16. This appears to be the only argument Lincoln makes regarding Weiss's allegations that Lincoln miscalculated premiums and that the amount Lincoln demanded in the Grace Notice to keep the Policy in force was incorrect. *See* Compl. ¶¶ 15–21.

This argument is without merit. First, the alleged admissions are not judicial admissions but merely constitute evidence, which a party is free to explain or even contradict. *See* 2 McCormick on Evid. § 254 (7th ed. database updated June 2016). Consequently, they cannot provide the basis for a motion for judgment on the pleadings. Moreover, the cases Lincoln cites suggesting that Weiss's submission of an insurance reinstatement form is dispositive of his claim that the Policy did not lapse are inapposite. *See* Def.'s Reply Mem. 8–9 (citing *Axelroad v. Metro. Life Ins. Co.*, 267 N.Y. 437 (1935); *Teeter v. United Life Ins. Ass'n*, 159 N.Y. 411 (1899); *Struhl v. Travelers Ins. Co.*, 7 N.Y.S.2d 881 (App. Div. 1st Dep't 1938), *aff'd*, 281 N.Y. 584 (1939)). Indeed, *Struhl* "was tried on the theory that the notice required by the statute had been given by

[the] defendant [insurance company] and received by the insured," and "[n]o argument concerning [section 3211's predecessor statute] was presented in the Appellate Division." *Salzman v. Prudential Ins. Co. of Am.*, 296 N.Y. 273, 278 (1947). Moreover, "[n]o question as to compliance with [section 3211's predecessor statute] was presented to [the New York Court of Appeals] in *Teeter*." *Id.* In sum, when an insured signs an insurance reinstatement form that includes a clause acknowledging that a policy has lapsed, the reinstatement form is not conclusive evidence that the policy lapsed; "[s]uch is not the law." *Id.* at 277–78.

Finally, even if Weiss were bound by a prior statement that he did not tender payment, that admission would not be fatal to his claim. Both the terms of the Certificate and section 3211 plainly required the Grace Notice to state the amount due. *See* N.Y. Ins. Law § 3211(b)(2); Am. Answer Ex. A, at 7. Lincoln cites no authority for the proposition that the statement of an incorrect amount satisfies this contractual and statutory obligation. Indeed, "[u]nless a proper notice ha[s] been sent to the insured in compliance with [section 3211], [a] policy of insurance [can]not lapse and [can]not be declared forfeited within one year from the failure to pay the premium." *Salzman*, 296 N.Y. at 276–77. Unlike a notice that includes only a "minor error" or "an obvious typographical error in the premium amount due," a notice with a "significantly higher" amount due than actually required is "[in]effective to cancel the policy." *Zeligfeld v. Phoenix Life Ins. Co.*, 975 N.Y.S.2d 370 (table), 2013 WL 1688902, at *4 (Sup. Ct. Kings Cty. Apr. 17, 2013); *see also Lebovits v. PHL Variable Ins. Co.*, No.12-CV-6397 (FB) (RML), 2016 WL 4194120, at *2 (E.D.N.Y. Aug. 9, 2016) (Block, J.) (concluding that the New York Court of Appeals "would invalidate a notice that misstated the premium due, as long as the misstatement was not de minimis").

Here, Weiss alleges that the amount needed to keep the Policy in force until August 6, 2012, was $3,841.00—significantly less than the $14,067.57 Lincoln demanded in the Grace

Notice.  Weiss Letter Response to 8/19/16 Order, ECF No. 22.[4]  Under New York law, however, Lincoln was permitted to demand payment during the grace period of "sufficient premium to keep the policy in force for three months from the date the insufficiency was determined."  N.Y. Ins. Law § 3203(a)(1).  Nevertheless, Weiss contends that "Lincoln demanded over [300%] of the required premium."  Weiss Letter Response to 8/19/16 Order, ECF No. 22.  That is, Weiss seems to allege that $11,523.00—three times $3,841.00—would have been sufficient to keep the Policy in force for three months from July 6, 2012, the date when Lincoln determined that the cash value of the Certificate was insufficient to cover the premium costs.  *See* Am. Answer Ex. E.  This figure is still over two thousand dollars lower than the sum Lincoln demanded.  This allegation is sufficient for Weiss to pass through the pleading stage.

    3.  <u>The Grace Period</u>

Lincoln argues that, even if New York Insurance Law section 3203 applies, the Grace Notice provided the sixty-one day grace period required by that statute.  Def.'s Mem. 13.  Lincoln further contends that the Grace Notice complied with the relevant Certificate provisions.  *Id.* 15–16.  Weiss argues that the grace period specified in the Grace Notice fell one day short of the statutory sixty-one day period.  Pl.'s Mem. 11–13; *see also* Compl. ¶ 23.  Weiss rests his claim on the contention that July 6, 2012, should have been excluded in the calculation of the grace period. Pl.'s Mem. 13; *see also id.* at 11–13 (citing N.Y. Gen. Constr. Law § 20).  He makes no argument in support of his allegation that the Grace Notice "failed to provide the correct grace period provided by the Policy."  Compl. ¶ 22.

Section 3203 provides that a grace period begins "on the day . . . the insurer determines that the [certificate's] net cash surrender value is insufficient to pay the total charges necessary to

<hr />

[4]  Weiss did not include this figure in his Complaint.  Nevertheless, rather than force him to file an amended complaint, I treat the letter as an amendment to the current Complaint.

keep the [certificate] in force for one month from that day." N.Y. Ins. Law § 3203(a)(1). Here, the Grace Notice indicated that the Policy entered a grace period on July 6, 2012—the date on which Lincoln determined that "[t]he cash value of th[e] certificate [was] not enough to pay the certificate charges" that were due on that day. Am. Answer Ex. E. Thus, the grace period began on July 6, 2012. The Grace Notice also indicated that Lincoln must receive payment "on or before September 4, 2012," or the Certificate would lapse. *Id.* That is, Weiss had until the end of the day on September 4, 2012, to make the required premium payment. The grace period indicated on the Grace Notice, therefore, was from July 6, 2012, to September 4, 2012. A quick calculation shows that this is sixty-one days: the period from July 6 to July 31 was twenty-six days, the period from August 1 to August 31 was thirty-one days, and the period from September 1 to September 4 was four days; adding twenty-six, thirty-one, and four yields sixty-one. *See* Def.'s Mem. 13. Moreover, even if the grace period were off by one day, that deficiency would not render the Grace Notice void. *Stein v. Am. Gen. Life Ins. Co.*, 34 F. Supp. 3d 224, 232 (E.D.N.Y. 2014) (Irizarry, J.) (holding that, because "[a] minor mistake does not necessarily void a grace notice," whether a grace notice provided a grace period that was reduced by one day "was immaterial" (citing *Nederland Life Ins. Co. v. Meinert*, 199 U.S. 171, 179 (1905))).

    4. Remaining Issues

    The parties' memoranda of law make several ancillary arguments. I briefly address some of the more substantial ones.

    a. Weiss argues that the Grace Notice violated New York Insurance Law section 3211 because it failed to provide (i) the correct amount due, (ii) the correct due date, (iii) the place to which and person to whom payment could be made, as well as (iv) the "statutorily required warning language." Pl.'s Mem. 10–11. This last argument appears to be based on the fact the Grace Notice included only the word "lapse," but omitted the word "terminate." Pl.'s Mem.

10–11.  The first two allegations appear to be duplicative of the two main claims alleged in the Complaint, which are discussed above.  *See* Compl. ¶¶ 15–23.

The last two allegations are not alleged in the Complaint—other than the vague legal conclusions included at the end of Weiss's Complaint, *see, e.g.*, Compl. ¶ 25 ("Lincoln's purported notice of cancellation failed to comply with applicable law."); *id.* ¶ 28 ("Lincoln did not comply with the statutory policy termination provisions."), which are "not entitled to be assumed true," *Iqbal*, 556 U.S. at 681.  In any event, Weiss's arguments are without merit.  Indeed, Lincoln's address—the same address listed as the Service Office address on the Certificate—is the only address, aside from Weiss's, listed on the Grace Notice.  *Compare* Am. Answer Ex. A, at 1, *with id.* Ex. E.  Similarly, by stating that, if Weiss failed to make the required payment, the Certificate would "lapse without value", *id.* Ex. E, the Grace Notice clearly conveyed the information section 3211 requires—"that unless such payment is made on or before the date when due or within the specified grace period thereafter, the policy shall terminate or lapse," N.Y. Ins. Law § 3211(b)(2); *see Zeligfeld v. Phoenix Life Ins. Co.*, 992 N.Y.S.2d 162 (table), 2014 WL 641363, at *4 (Sup. Ct. Kings Cty. Feb. 11, 2014) ("[I]n cases addressing the language of notices, courts have held that the notice need not follow the exact wording of the statute as long as the information intended to be provided is conveyed."  (citing *McDougall v. Provident Sav. Life Assurance Soc'y of N.Y.*, 135 N.Y. 551, 556–57 (1892))).  In short, contrary to Weiss's contentions, the Grace Notice left nothing to "guesswork."  *See* Pls.' Mem. 14 (quoting *Nationwide Mut. Ins. Co. v. Bates*, 683 N.Y.S.2d 739, 742 (Sup. Ct. Nassau Cty. 1998)).

b.  Weiss argues that Lincoln "has not provided proof that the lapse letter [i.e., Grace Notice] was sent within the time frame required by law."  Pl.'s Mem. 4.  Indeed, he argues that the type of proof required to invoke the presumption of mailing that would attach under New York Insurance Law section 3211(c)—such as affidavits outlining Lincoln's mailing procedures—is

evidence Lincoln is "prohibited from . . . [providing] on a motion on the pleadings." *Id.* at 5. On that score, Lincoln contends that, "even if § 3211 were deemed to apply," Weiss's claim would fail because of the evidentiary presumption that section 3211(c) provides. Def.'s Mem. 14. Lincoln also argues that Weiss's pre-litigation statements bar his claim. *Id.* at 14–15.

First, Weiss does not clearly allege in his Complaint that Lincoln did not send the Grace Notice, although he does allege that "Lincoln failed to send notice of cancellation in accordance with Policy terms," and that "Lincoln failed to send notice of cancellation in accordance with the law." Compl. ¶¶ 32–33. While these paragraphs could arguably be read as an allegation that Lincoln never sent the Grace Notice, the more straightforward reading is as an allegation that the Grace Notice did not comply with the relevant statutory or Certificate terms. This is particularly so because, unlike the complaint in *National Society for Hebrew Day Schools*, Weiss makes no factual allegations that Weiss never received the Grace Notice and that Lincoln never mailed the Grace notice. *Compare Nat'l Soc'y for Hebrew Day Schs.*, 14-cv-970 (ERK) (PK), Am. Compl. ¶¶ 46–51, ECF No. 15, *with Weiss v. Lincoln Nat'l Life Ins. Co.*, 14-cv-4944 (ERK) (JO), Compl. ¶¶ 25–33. Second, because the gravamen of the Complaint is based on alleged deficiencies in the Grace Notice, Weiss cannot seriously contend that Lincoln never sent the Grace Notice and that Weiss never received it. If he means to allege that Lincoln did not send it within the prescribed timeframe, that allegation must be supported by specific factual allegations—such as a claim that Weiss never received the Grace Notice, or did not receive it in a timely manner—sufficient to permit the reasonable inference that Lincoln "is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 556. Lincoln is not required to produce evidence to defeat a claim Weiss has not alleged.

c. Lincoln contends that it is clear from the pleadings that Weiss knew the Certificate was in a grace period. Def.'s Mem. 14–15. I do not agree. The document to which Lincoln points

suggests that Weiss had meant to make a payment—which, because of a "misunderstanding," never reached Lincoln—and that Weiss knew that, at the time the document was written, Lincoln took the position that the Certificate lapsed. Am. Answer Ex. H. More significantly, Lincoln does not explain how or why Weiss's alleged knowledge that the Certificate was in grace relieved Lincoln of its duty to provide a compliant Grace Notice.

d. I agree with Lincoln that Weiss's waiver and estoppel claims lack factual substance. Def.'s Mem. 16–17; *see also* Compl. ¶¶ 34–35 ("Lincoln is estopped from cancelling the Policy. Lincoln has waived it right to cancel the Policy."). Moreover, Weiss makes no attempt to respond to Lincoln's argument and defend these claims; therefore, he appears to have abandoned them. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[A] court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

## CONCLUSION

Lincoln's motion for judgment on the pleadings is denied as to Weiss's claim that Lincoln miscalculated premiums and provided an incorrect amount due on the Grace Notice. The motion is granted as to all other alleged deficiencies in the Grace Notice.

**SO ORDERED.**

Brooklyn, New York
September 15, 2016

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge